AO 93 (Rev. 11/13) Search and Seizure Warrant (USAO CDCA Rev. 04/17)

# UNITED STATES DISTRICT COURT
for the
Central District of California

**ORIGINAL**

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  2:18-MJ-02930 |
| Storage Unit #1029 at Public Storage, 4295 Outer Traffic Circle, Long Beach, California 90804 | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     Central     District of     California    
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

Such affidavit(s) or testimony are incorporated herein by reference and attached hereto.

**YOU ARE COMMANDED** to execute this warrant on or before    14 days from the date of its issuance    *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    the U.S. Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office   
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
   ☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of ____

Date and time issued:   11/2/2018  11:52 a.m.    _____[signature]_____
                                                      *Judge's signature*

City and state:    Los Angeles, CA    Hon. Alexander K. MacKinnon
                                       *Printed name and title*

AUSA: Veronica M.A. Alegria x3493

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: 2:18-mJ-02935 | Date and time warrant executed: 11/5/18 / 10:30 A.M. | Copy of warrant and inventory left with: In Unit #1029 |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

nothing found, nothing seized

### Certification

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 11/5/18

*Executing officer's signature*

Mark White / Postal Inspector
*Printed name and title*

## ATTACHMENT A-3

**PREMISES TO BE SEARCHED**

The property to be searched is storage unit #1029 at Public Storage, located at 4295 Outer Traffic Circle, Long Beach, California 90804 ("SUBJECT PREMISES 3"). SUBJECT PREMISES 3 is internally located within the Public Storage facility.

SUBJECT PREMISES 3 is a unit with a white slide-up bay door and is locked by a "cylinder lock door." A placard with #1029 is written vertically in red lettering on the right side of the storage unit.

The areas to be searched at SUBJECT PREMISES 3 include: (a) all containers, bags, storage spaces, and safes in SUBJECT PREMISES 3; and (b) any digital devices found at SUBJECT PREMISES 3.

ATTACHMENT B

**ITEMS TO BE SEIZED**

1. The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 471 (Manufacturing Counterfeit Currency), 472 (Passing or Possessing Counterfeit Currency), and 371 (Conspiracy) (collectively, the "SUBJECT OFFENSES"), namely:

    a. Counterfeit Federal Reserve Notes ("FRN");

    b. Any and all altered, forged, counterfeited, or falsely made obligation or other security of the United States or any other country to include partial notes, uncut sheets, or security features associated with genuine currency.

    c. Any records or documents of the distribution of counterfeit currency, including but not limited to, inventories, ledgers, receipts, journals, financial statements, check registers, notes, and correspondence;

    d. Any tools, items, applications, or programs used or associated with the production of counterfeit currency or any other obligation or security, pattern notes and;

    e. Any items, applications, or programs used to detect counterfeit currency, including detection pens, or to alter genuine currency, including bleaching products;

    f. Any supplies, items, applications, or programs used in the production of counterfeit currency to include any byproducts of the production process;

i

g. Bank statements, records, and records of wire transfers showing money paid or received for counterfeit currency;

h. Telephone toll records and bills showing calls made to customers and/or business associates related to the sale/distribution of counterfeit currency;

i. Travel documents, including but not limited to, passports, travel receipts, airline tickets, and charge receipts used in furtherance of the counterfeit distribution scheme;

j. Records, documents, applications, or materials containing indicia of occupancy, residency or ownership of any location being searched including, but not limited to, rent receipts, utility company receipts, telephone bills, canceled checks, bank statements, canceled mail envelopes; and surveillance video;

k. Currency, in any form, constituting the proceeds of the counterfeit distribution scheme;

l. Any and all items obtained as a result of crimes committed;

m. Any and all documents and items related to United States Postal Money Orders.

n. Records, documents, programs, applications, or materials relating to any bank accounts, credit reports, credit card accounts, or other financial accounts and other personal identifying information;

o. Records, documents, programs, applications, or materials relating to receipts or invoices for credit card

ii

purchases or activity not in the name of WOODS or HIGGINS but with the means of identification of another;

    p.    U.S. currency in excess of $1000;

    q.    Gold if worth is in excess of $1000;

    r.    Records, documents, programs, applications, or materials sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

    s.    Records, documents, programs, applications, or materials sufficient to show SMS text, email communications, social media messages and accounts, or other text or written communications sent to or received from any of the digital devices and which relate to the SUBJECT OFFENSES;

    t.    Documents and keys relating to public storage units or safety deposit boxes; and

    u.    Any digital device used to facilitate the above-listed violations (and forensic copies thereof).

    v.    With respect to any digital device used to facilitate the above-listed violations:

        i.    evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

iii

    ii. evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    iii. evidence of the attachment of other devices;

    iv. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

    v. evidence of the times the device was used;

    vi. passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

    vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

    viii. records of or information about Internet Protocol addresses used by the device;

    ix. records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

  2. As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created,

modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

3. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

### VIII.    SEARCH PROCEDURE FOR DIGITAL DEVICES

4. In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

   a. Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) to an appropriate law enforcement laboratory or similar facility to be searched at that location. The search team shall complete the search as

soon as is practicable but not to exceed 120 days from the date of execution of the warrant. The government will not search the digital device(s) beyond this 120-day period without obtaining an extension of time order from the Court.

  b. The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

    i. The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the list of items to be seized. The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

    ii. The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

    iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

  c. If the search team, while searching a digital device, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that device pending further order of the Court and shall make and retain

notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

   d.   If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

   e.   If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

   f.   If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

   g.   The government may also retain a digital device if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

   h.   After the completion of the search of the digital devices, the government shall not access digital data falling

vii

outside the scope of the items to be seized absent further order of the Court.

5. In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

   a. Any digital device capable of being used to commit, further, or store evidence of the offense(s) listed above;

   b. Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

   c. Any magnetic, electronic, or optical storage device capable of storing digital data;

   d. Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

   e. Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

   f. Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

   g. Any passwords, password files, biometric keys, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

6. During the execution of this search warrant, with respect to any biometric sensor-enabled device that is within

viii

the scope of the warrant, law enforcement personnel are authorized to: (1) depress the thumb- and fingerprints of WOODS and HIGGINS onto the fingerprint sensor of the device (only when the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of the face of WOODS and HIGGINS with his eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.

7. The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.